

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RONALD MICHAEL HILL,                    §
                                        §
            Petitioner,                 §
                                        §
v.                                      §        No. 4:14-CV-948-A
                                        §
LORIE DAVIS, Director,[1]               §
Texas Department of Criminal            §
Justice, Correctional                   §
Institutions Division,                  §
                                        §
            Respondent.                 §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Ronald Michael Hill, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I.  Factual and Procedural History

In May 2005 petitioner was indicted in Tarrant County, Texas, Case No. 0973203D, for the murder of I.S. on March 15,

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

2005. Adm. R., Clerk's R. 2-3, ECF No. 8-2. The indictment also included a repeat-offender notice alleging a prior 1991 felony conviction for aggravated robbery. *Id.* On February 28, 2006, petitioner's trial commenced. The state appellate court summarized the evidence as follows:

> Appellant, a married father of four in his thirties, had an account with the same dating service phone chat line as his fifteen-year-old victim. The evidence at trial indicated that Appellant cut the victim's throat on March 15, 2005, after she told him that she would keep the baby if pregnant with his child.[2] Appellant was charged with murder and initially pled not guilty and true to the repeat offender allegation for aggravated robbery.
>
> > [2]Evidence at trial included the chat company's records, Appellant's and the victim's phone records, the electronic register journal from a Walgreen's two blocks from the victim's house, which showed that condoms and a pregnancy test were purchased with a debit card in Appellant's name on March 15, 2005, and the Walgreen's surveillance tape from that day. Two of Appellant's fellow inmates also testified that Appellant confessed to them.
>
> On the first day of trial, after court adjourned after empaneling and instructing the jury, Appellant was seen showing his family a handwritten note. The note stated
>
> > Evon, Kesha, Momma, y'all have to go and get Quashunda. They want her to take the stand. She can't be allowed to do that. You'll need to get her and take her to Grandma's house until the trial is over. She cannot testify at all. And I will have to have someone to

2

> claim the pregnancy test, someone to say I
> was sexually involved with them during the
> month of February and they thought they was
> pregnant because they missed the cycle. It
> was a one-time deal and nothing else. The
> case goes away with that, and one person who
> could be used is Visa or Christie. Otherwise,
> I'm in trouble.

Quashunda is Appellant's sixteen-year-old daughter. She
testified that Appellant called her and asked her to
tell his current wife, Sharnise, that he had bought the
pregnancy test and condoms for Quashunda, explaining
that he did not want Sharnise to know that he was
having an affair. Quashunda did so, but then told her
mother, Appellant's ex-wife, about what her father had
asked her to do. The next day, she gave a written
statement to the police about her father's request. The
Appellant's note was retrieved from him.[3] The next day,
Appellant chose to change his plea to guilty.

> [3]The note was admitted into evidence and
> published to the jury during the third day of
> trial.

The trial judge thoroughly admonished Appellant
before allowing him to change his plea, and then asked
Appellant's attorney if Appellant's plea change was
made with his consent. Appellant's attorney indicated
that it was. The trial judge then reiterated to
Appellant the seriousness of the change, stating,

> You understand, [Appellant], that if you
> enter this plea in front of the jury, that I
> will instruct the jury at the conclusion of
> the trial to find you guilty and the jury
> will . . . have a single issue as to what the
> punishment is to be assessed. Do you
> understand that?

Appellant replied, "yes." The trial judge then informed
Appellant of the punishment range and asked if
Appellant understood. Appellant said that he did.

3

Finally, the trial judge asked him, "Knowing all of
these things, do you still wish to plead guilty?"
Appellant said, "yes," and the trial judge accepted his
plea. In his opening statement, Appellant's attorney
explained the plea change to the jury, saying that,

> [Appellant chose], for whatever reason, to
> attempt to get some people to not tell the
> truth in this case and to secrete a witness
> from you so that you would not hear from her,
> and he has been caught in that. That changes
> this case from a circumstantial one. And that
> is the reason for his change of plea.

After the State's first three witnesses testified,
Appellant's attorney asked the trial court to instruct
Appellant on how to behave and to work with him. He
stated that after Appellant pled guilty, he initially
refused to look at the State's exhibits, photographs of
the inside of the victim's home, and after that,

> [H]e's again kind of basically shut down. I
> don't know what words to use to describe
> it.... He is sitting at the table staring at
> the table or keeping his eyes closed. He's
> nonresponsive to me when I try to speak with
> him. If I nudge him because he appears to
> maybe be asleep, he doesn't respond in any
> way as a rule. He's been reluctant to stand
> when the Court's ordered him to stand. . . .
> This case is not over. There are many things
> that [Appellant] can do to lessen the effect
> of his actions that he has now acknowledged.
> There are things that he can do to make
> things worse.

The court instructed Appellant to look at him when
addressed, to sit with his head up, and to work with
his attorney. Appellant orally acknowledged these
instructions.

Later the same day, Appellant's attorney asked
that the record reflect that Appellant had decided to

4

voluntarily absent himself, acknowledging that the
trial court had acceded to his request to have
Appellant examined by a doctor. He described
Appellant's behavior:

> [Appellant] is drooling at my table, both on
> me, my feet, and the papers and the table.
> He's acting as though he's suddenly nodding
> off and then jerks to wakefulness in such a
> startling manner as to cause the bailiffs to
> worry about him as perhaps that he's about to
> get up and leave. He is sniffling and crying
> and whining. And I think that for those
> reasons his presence is actually a detriment
> to him at this point and so I agree with his
> decision [to voluntarily absent himself].

The trial court granted his request and added,

> The record will also reflect that the Court
> during the break asked the physician from the
> Tarrant County Jail to come over and examine
> [Appellant]. The doctor indicated to the
> Court that [Appellant], although somewhat
> disoriented, posed no medical concern to the
> doctor in that he was able to stand, extend
> his arms[,] to function physically as well as
> mentally. He had some delay as far as being
> able to focus, but the doctor felt even if he
> wished to continue physically in the court,
> there would be no medical concern on behalf
> of the doctor for [Appellant's] well-being.

The examining physician, Dr. Alan Byrd, who was
the Medical Director for Correctional Health Services
at the Tarrant County Jail, filed an affidavit that
stated that he examined Appellant's general condition
in a holdover room off the courtroom and that:

> My observation at that time was that
> generally [Appellant] was sitting upright,
> quietly[,] in no obvious distress. I asked
> him some general questions to which he

5

responded appropriately. I listened to his
chest and felt his pulse and did not feel he
was in any acute distress. I asked him to
stand and walk for me[,] which he did slowly
but appropriately. He was able to follow
verbal commands that I gave him. I then
reported my findings to the Judge and told
him I did not think [Appellant] had a life
threatening condition and in general[,] based
on my limited evaluation[,] his condition was
stable.

The next day, before trial resumed, Appellant's
attorney informed the trial court that Appellant was
still behaving oddly, by refusing to make eye contact,
acting as though he were asleep, drooling, speaking in
a cross between gibberish and baby talk, and "acting as
though he was in sort of a catatonic state." He
concluded by informing the trial court of Appellant's
decision not to attend trial that day because his
family was not there and added

I do not think he is in a bad state as he was
yesterday, even though he presented that
behavior [to the deputy]. And it's my opinion
that he may possibly be malingering in some
respects to that. I think that's the opinion
the doctor shared with Your Honor yesterday.
However, he did make sense. He did make a
decision, and it's his to make, and it was
that he did not wish to attend the trial.

Appellant changed his mind later that day and returned
to the trial. Outside the presence of the jury,
Appellant's attorney told the trial court, "Upon being
informed that his family was now present in the
courtroom, my client changed his mind about attending
his trial." Appellant was convicted by the jury and
sentenced to life imprisonment.

Appellant's motion for new trial included his
averment that he did "not recall pleading guilty and
was not mentally stable to understand or react to

6

anything that morning [March 1, 2006, the day after
jury selection]" and that he was unable to respond to
any questions or motions of any sort. At the hearing on
this motion, Appellant testified that to relax during
trial, he had purchased and taken antipsychotic
medication from other inmates the day after jury
selection. He testified that he did not recall changing
his plea to guilty and that he had been unaware of
anything going on around him at trial and had not been
able to assist his attorney in the defense of his case.

A two-page document from Dr. Kelly Goodness,
containing her conclusion as a medical psychological
expert with regard to Appellant's competence, was
admitted into evidence at the hearing. Her report
contained Appellant's assertions that he had ingested
six 300-milligram Seroquel tablets and six 100-
milligram Elavil tablets on the day he pled guilty, and
as a consequence, had no recall of any events between
the time that he ingested the medication at eight a.m.
that day until approximately five or six p.m. that
evening. She opined that Appellant was competent to
enter a guilty plea, stating:

• [Appellant's] description of amnesia on the day he
entered his plea does not mesh well with what would be
expected with ingesting what he has claimed to have
ingested. . . . At a minimum, it would take some time
for the medication to work its way through his system
before providing a sedating effect significant enough
to prevent the encoding of memories. Moreover,
[Appellant] provided some contradictory information
regarding what he does and does not recall from that
day suggesting that he is not being entirely forthright
in his report.

• [Appellant] reported that he voluntarily ingested
the substances. As such, any deleterious effects on his
mental abilities were not due to a serious mental
illness or defect, but were rather due to willful
actions on [Appellant's] part.

• It is my professional opinion that [Appellant] was

7

competent to plead guilty at the time that he did so on
March 1, 2005.

In response to the State's question about any
steps Appellant had taken while in jail to manipulate
the system for housing assignments, Appellant said that
he had not. The State then brought forth a report from
the Tarrant County jail that stated, "client admits
housing manipulation." Appellant claimed that he took
six Seroquel pills from one inmate and four or five
Elavil[4] pills from another.[5] Appellant's attorney also
asked the trial court to take judicial notice of two
affidavits from Appellant, which it agreed to do.

> [4]Seroquel is used to treat mental
> conditions like bipolar disorder or
> schizophrenia and is an anti-psychotic drug
> used to restore the balance of the brain's
> neurotransmitters. It is supposed to decrease
> hallucinations, improve concentration, and
> prevent severe mood swings.

> [5]Appellant's appellate attorney informed
> the trial court that after his appointment
> for Appellant's appeal, he contacted
> Appellant's trial attorney, who told him that
> "after a conversation he had had with
> [Appellant], he . . . had been made aware
> that it is now [Appellant's] contention that
> he was not competent at some portion during
> his trial." That led Appellant's new attorney
> to request the court to appoint a doctor to
> examine Appellant and the trial court
> subsequently appointed Dr. Goodness. After
> Dr. Goodness reported that in her opinion,
> Appellant had been competent, he informed
> Appellant that Appellant would have to pay
> for any second opinion and he informed the
> trial court that he spoke with Appellant's
> wife three times about arranging for a
> doctor, but that she never followed through.
> Appellant complained at his hearing that his
> family had tried to arrange for a second

8

opinion, but that his attorney had not
communicated with him or his family.

Similar to his testimony at the new trial hearing,
Appellant's affidavit asserted that he did not recall
changing his plea to guilty and that he "was told by
guards and representative[s] of the M.H.M.R. I was out
of it when they brought me in," and that someone told
him that he might have had a "brain shutdown." He
continued:

> They say [his family] I was drulling [sic]
> and not here and if one sense that is so I
> was not mentally stable to enter a plea of
> guilt when I haven't done nothing. I was
> shacked the entire time when I came back and
> was barely understanding what was going on
> during trial until I asked my lawyer why he's
> not questioning the witnesses and you judge
> told the jury to find me guilty. I didn't
> know what to say until my family asked me why
> I plead guilty and I told them I didn't. If I
> was guilty I could have taken a plea deal but
> I wouldn't. The note I could have easily
> explained because one of the witnesses mother
> was one of the females I had sexual relations
> with and I didn't want to harm her marriage
> or mines [sic] . . . . Also if it pleases the
> court why would they put me on suicide watch
> and put me in a green padded suit if someone
> didn't come to a conclusion that something
> was wrong. I wasn't sentenced and this was
> the 1st day of trial. Someone made a decision
> I was not alright or I would have been back
> on my tank in population and not on suicide
> watch in a padded cloth. I didn't tell nobody
> I was going to harm myself so who seen me and
> had me administered like that.

Appellant also said "no" when the State asked him if he
recalled, after jury selection on the first day of
trial, showing his family the note he had written about
Quashunda. The trial court denied his motion for new

9

trial.

Adm. R., Mem. Op. 2-10 (citations omitted).

Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review, and the United States Supreme Court denied writ of certiorari. Adm. R., Mem. Op. 25, ECF No. 17-2; *Hill v. Texas*, 552 U.S. 1202 (2008). Petitioner also sought postconviction state habeas relief and DNA testing under chapter 64 of the Texas Code of Criminal Procedure, to no avail. *Id.*, Clerk's R. 314, ECF No. 16-16 & Action Taken, ECF No. 17-15.

## II. Issues

Petitioner raises twelve grounds for relief, which are construed as follows:

(A)  He received ineffective assistance of counsel (grounds one and eight through twelve);

(B)  He was denied his right of confrontation when he was prohibited from cross-examining Jakeeta Taylor (ground two);

(C)  He is actually innocent based on newly discovered evidence (ground three);

(D)  The state failed to disclose favorable, exculpatory and impeachment evidence in violation of *Brady* (ground four);

(E)  His conviction violates due process because it was

10

based on false evidence and perjured testimony
(ground five);

(F)   His guilty plea is invalid because the nature and
elements of the charge were not explained to him
(ground six); and

(G)   His conviction violates due process because he was
incompetent to stand trial (ground seven).

Pet. 6-11, ECF No. 1.[2]

### III.   Rule 5 Statement

Respondent believes that Petitioner has sufficiently
exhausted his claims in state court. She does not believe that
the petition is barred by limitations or subject to the
successive-petition bar. Resp't's Answer 13, ECF No. 25; 28
U.S.C. §§ 2244(b), (d) & 2254(b)(1).

### IV.   Discussion

#### A.   Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened
standard of review provided for by the Anti-Terrorism and
Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the
Act, a writ of habeas corpus should be granted only if a state
court arrives at a decision that is contrary to or an
unreasonable application of clearly established Supreme Court

---

[2]Because the pagination in the petition overlaps, the pagination in the
ECF header is used.

precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington,* 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, as in this case, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson,* 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v.*

12

*Sain,* 372 U.S. 293, 314 (1963)[3]; *Catalan v. Cockrell,* 315 F.3d
491, 493 n.3 (5th Cir.2002); *Valdez v. Cockrell,* 274 F.3d 941,
948 n.11 (5th Cir. 2001).

## B. Mental Competency

Under his sixth and seventh grounds, petitioner claims his
guilty plea was invalid because he was mentally incompetent to
enter the plea and because the nature and elements of the charge
were not explained to him. Pet. 8-9, ECF No. 1. The state
appellate court addressed this matter as follows:

### DISCUSSION

In his first point, Appellant contends that the
trial court should have granted his motion for a new
trial because he was not competent to stand trial and
that the trial court erred by failing to conduct a
hearing during trial with regard to Appellant's
competency as soon as evidence of his incompetency was
brought to the court's attention. In his second point,
related to the first, he argues that the trial court
erred by failing to determine, by direct questioning,
whether he was absent voluntarily from the trial court
punishment proceedings under article 33.03 of the Texas
Code of Criminal Procedure.

*Standard Of Review*

We review a trial court's denial of a motion for
new trial, its decision not to conduct a competency
hearing, and its determination that a defendant is
voluntarily absent under the abuse of discretion
standard. A trial court abuses its discretion if its

---

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C.
§ 2254(d). *Harris v. Oliver,* 645 F.2d 327, 330 n.2 (5th Cir. 1981).

13

decision is arbitrary or unreasonable. Because
Appellant contends that his plea change shows
incompetency, we must review the trial court's decision
to allow him to change his plea to guilty at trial, as
well as whether the trial court abused its discretion
by failing to conduct a competency hearing during the
trial, whether it abused its discretion by denying
Appellant's motion for new trial on that basis, and
whether Appellant's absence from trial was voluntary.

### Appellant's Guilty Plea

A guilty plea must be freely, knowingly, and
voluntarily made. In considering the voluntariness of a
guilty plea, the court should examine the record as a
whole. When the record reflects that a defendant was
properly admonished, it presents a prima facie showing
that the guilty plea was knowing and voluntary. The
burden then shifts to the defendant to show that his
plea was not voluntary. Unless an issue is made of an
accused's present insanity or mental competency at the
time of the plea, the court need not make inquiry or
hear evidence on such issue.

Here, the record indicates that, before accepting
Appellant's guilty plea, the trial court thoroughly
admonished Appellant about his decision to change his
plea. Appellant affirmatively acknowledged these
admonishments and still chose to change his plea to
guilty. This presented a prima facie showing that his
plea was knowing, intelligent, and voluntary.

Appellant's trial counsel also indicated to the
trial court that the plea change was with his consent
and stated, "I feel [Appellant] adequately understands
his options, his rights, and he has made an intelligent
and free choice." Reviewing the record as a whole,
including the note recovered from Appellant after jury
selection that indicated he planned to keep one witness
from testifying and to find another witness to lie for
him, it would appear that Appellant's plea change was
knowing, intelligent, and voluntary. Dr. Goodness's
opinion submitted at the new trial hearing corroborates

14

the voluntariness of Appellant's plea.

We must next examine whether Appellant's subsequent behavior at trial and his claims in his motion for new trial are sufficient to demonstrate that Appellant's plea was not actually voluntary, that he was not competent to stand trial, and that the trial court abused its discretion when it did not hold a competency hearing during the trial and denied Appellant's motion for a new trial.

### Chapter 46B Of The Texas Code Of Criminal Procedure

Chapter 46B of the code of criminal procedure addresses a criminal defendant's competence to stand trial. Article 46B.004, entitled "Raising Issue of Incompetency to Stand Trial," provides,

> (a) Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. A motion suggesting that the defendant may be incompetent to stand trial may be supported by affidavits setting out the facts on which the suggestion is made.

> (b) If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.

> (c) On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.

If, under subsection (b), evidence comes to the trial court's attention suggesting that the defendant may be incompetent to stand trial, then, under subsection (c), the trial court is required to determine by informal

15

inquiry whether there is some evidence that would support a finding that the defendant may be incompetent to stand trial.

A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him. However, a defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. If, after an informal inquiry, the court determines that evidence exists to support a finding of incompetency, the court shall order an examination to determine whether the defendant is incompetent to stand trial. A court must conduct a competency inquiry only if there is evidence sufficient to create a bona fide doubt in the mind of the judge whether the defendant meets the test of legal competence. A defendant must be competent to be sentenced.

In *Moore,* in which the court of criminal appeals held that the record supported the trial court's conclusion that there was no bona fide doubt as to the defendant's competence, defense counsel raised the competency issue several times, based on communication problems with the defendant, his occasionally profane outbursts during trial, and his mental health history. His counsel expressed the communications difficulty as, "I'm talking in apples and [his] responses are in oranges," and stated that it appeared to him that the defendant did not have a rational or factual understanding of the proceedings against him. The court of criminal appeals held that the unspecified communication problems, outbursts, and the defendant's mental health history were insufficient to raise a bona fide doubt as to the defendant's competence to stand trial. It reasoned that unruly and disruptive courtroom demeanor was not probative of incompetence to stand trial because if it were, then a defendant "could effectively avoid criminal justice through immature behavior." It also held that even though the defendant

had been hospitalized for depression three years
earlier and had a family history of mental illness and
alcoholism, to raise the issue of competency with
regard to mental health, there had to be evidence of
recent severe mental illness or bizarre acts by the
defendant or moderate retardation.

In *Lawrence*, the trial court's informal inquiry
established that the defendant did not suffer from
recent severe mental illness or moderate retardation,
that he understood the charges that he was facing, that
he had been able to communicate in a meaningful way
with his attorneys, that an ex parte evaluation had
found him competent to stand trial, and that his own
counsel had no question about his competence to stand
trial. We held that this inquiry satisfied Chapter 46B.

In contrast to *Moore*, Appellant's attorney never
raised the competence issue at trial, but rather, asked
the trial court to instruct Appellant to work with him
and to behave himself appropriately. He observed to the
trial court on the following day that Appellant was
possibly faking and that Appellant's decision not to
attend trial did make sense, in spite of Appellant's
strange behavior. Appellant later changed his mind
about attending trial when his family arrived. At the
close of trial, when asked whether he knew of any legal
reason why sentence should not be pronounced,
Appellant's attorney said that he knew of none.

Dr. Byrd, who examined Appellant at the court's
request, stated in his affidavit that Appellant was in
a stable condition. There is no showing that the trial
court abused its discretion by relying on Dr. Byrd's
report and not holding a competency hearing. Appellant
was able to communicate with the trial judge, his
attorney, and Dr. Byrd, and appeared to have a rational
and factual understanding of the proceedings against
him, based on his decision to attend trial when his
family was present. His ability to assist his attorney
and his understanding of the proceedings against him
manifested itself through his agreement to view the
photos of the victim's house and his insistence on

being present at trial when his family attended.
Appellant's mental health history was not raised at
trial.[7] After reviewing the entire trial record, and in
light of our discussion of voluntary absence below, we
cannot say that the trial court abused its discretion
by failing to conduct further inquiry into Appellant's
competency at trial.

> [7]Appellant's MHMR and medical records
> were attached to the record by business
> affidavit. They indicate that he may have
> suffered depression at times while in prison,
> between August 2005 and March 2006. However,
> there was no evidence presented at trial or
> at the hearing on the motion for new trial
> that showed that Appellant's unusual behavior
> was caused by anything other than his alleged
> voluntary drug ingestion.

*Motion For New Trial*

A trial court abuses its discretion by denying a
motion for new trial only when no reasonable view of
the record could support its ruling. When competency is
challenged in a motion for new trial, the trial court
does not look to see whether the evidence raises a bona
fide doubt as to competence; instead, it applies the
normal standard used in deciding a motion for new trial
under which the trial court considers all the evidence
presented, judges the credibility of witnesses, and
resolves conflicts in the evidence. We apply the abuse
of discretion standard because, at this stage of the
proceeding, the trial court determines whether
Appellant's incompetency, if any, impugned the
integrity of its judgment during trial, and the trial
court, having observed Appellant both at trial and at
the motion for new trial hearing, is in the best
position to make this determination. We consider all of
the competency evidence presented at the motion for new
trial hearing and reverse only if the trial court
abused its discretion.

We have already reviewed Appellant's behavior at

18

trial, which he claims should have raised a bona fide
doubt about his competency to stand trial, and
concluded that the trial court did not abuse its
discretion by not conducting a competency hearing
during trial. Appellant presented nothing more at the
new trial hearing than his own testimony that he was
incompetent at the time of trial because of some drugs
that he took. Appellant essentially testified that he
was unable to assist his attorney and lacked a rational
and factual understanding of the proceedings against
him, stating that he did not recall changing his plea
to guilty, that he "couldn't have been aware of nothing
that was going on with [him]," and that he basically
had no recollection of anything after taking the drugs.

Considering Appellant's testimony and affidavit,
Dr. Goodness's affidavit on the effect of Appellant's
alleged drug use on memory encoding, and Appellant's
impeachment through the MHMR records, which tended to
show that Appellant lacked credibility, we cannot say
the trial court abused its discretion in denying
Appellant's motion for new trial. Faced with
conflicting testimony regarding the effects of the
alleged drug use, the trial court, as finder of fact at
the hearing, was entitled to assess Appellant's
credibility and believe or disbelieve any testimony
presented.

Adm. R., Me. Op. 10-20, ECF No. 17-2 (citations omitted).

Petitioner also raised the matter in his state habeas

application. Counsel responded to petitioner's allegations via

affidavit, wherein he averred that petitioner was competent in

his opinion; that petitioner "dropped his act" several times

while he was alone with petitioner in the holdover; that

petitioner was able to assist him in "evaluating for possible

objection photos of the crime scene"; and that petitioner chose

19

his bizarre behavior in order to absent himself from the
courtroom after admitting his guilt so as to avoid facing his
family. Adm. R., Writ WR-63,019-09, vol. 2, 354, ECF No. 18-1.
Based on counsel's affidavit, petitioner's demeanor in court, the
documentary evidence, and the record of the plea and motion-for-
new-trial proceedings, the state habeas judge entered the
following relevant factual findings that were later adopted by
the Texas Court of Criminal Appeals:

   38.  Applicant testified that he had sufficient time to
        discuss "all of the allegations that [were]
        contained in th[e] indictment."

   39.  Applicant waived formal reading of the indictment.

   40.  The trial court admonished Applicant in accordance
        with article 26.13 of the Texas Court of Criminal
        Procedure.

   41.  There is evidence in the record that Applicant was
        properly advised of the allegations against him.

   42.  There is no credible evidence that Applicant was
        not properly advised of the nature of the charges
        and consequences of his plea.

        .  .  .

   44.  Applicant pled guilty because he was caught trying
        to secret a witness.

   45.  Applicant pled guilty because the jury would have
        construed his confiscated note as a confession.

        .  .  .

20

47.   Applicant['s] plea of guilty was knowingly,
      voluntarily, and freely made.

      . . .

71.   Applicant presents no evidence to support his
      claim that he was incompetent to stand trial.

72.   Had a competency hearing been held, Hon.
      Youngblood would have been compelled to testify
      that he witnessed Applicant when he had "dropped
      his act" of incompetence several times when he and
      Applicant were alone.

73.   The Second Court of Appeals found that ". . . Dr.
      Goodness's affidavit on the effect of
      [Applicant's] alleged drug use on memory encoding,
      and [Applicant's] impeachment through the MHMR
      records, . . . tended to show that [Applicant]
      lacked credibility.

74.   The Second Court of Appeals concluded that . . .
      "the trial court did not abuse its discretion by
      not conducting a competency hearing during trial."

Id., Writ 655-56 (citations omitted).

Based on its findings, the habeas court concluded that

petitioner had failed to demonstrate that he did not have the

sufficient present ability to consult with counsel with a

reasonable degree of rational understanding, that he did not have

a factual and rational understanding of the proceedings against

him, and that he was not competent to stand trial. Id. at 666.

The state courts' adjudication of the issues comports with

federal law on the issues.

21

The conviction of a mentally incompetent defendant violates constitutional due process. *Pate v. Robinson,* 383 U.S. 375, 378 (1966); *Mata v. Johnson,* 210 F.3d 324, 329 (5th Cir. 2000). The standard for competency to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402 (1960); *Bouchillon v. Collins,* 907 F.2d 589, 592 (5th Cir. 1990). A court must sua sponte conduct an inquiry into a defendant's mental capacity if the evidence raises a bona fide doubt as to the defendant's competency at that time. *Drope v. Missouri,* 420 U.S. 162, 180 (1975). In determining whether there is a "bona fide doubt" as to the defendant's competence, the court considers: (1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency. *Drope,* 420 U.S. at 180.  The test is an objective one. *Pedrero v. Wainright,* 590 F.2d 1383, 1388 (5th Cir. 1979). If the trial court receives evidence, viewed objectively, that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial. *Id.* In a federal habeas corpus proceeding stemming from a state court

22

conviction, deference must be given to a state court's decision on the need for a competency hearing. *See Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000); *United States v. Williams,* 819 F.2d 605, 607 (5th Cir. 1987). The burden is on the petitioner to prove by a preponderance of the evidence that he was incompetent. *Bouchillon,* 907 F.2d at 592.

Petitioner fails to meet this burden. He presents nothing that would undermine the presumption of correctness to which the state courts' findings are entitled. Petitioner's conclusory allegations that he was not aware of the nature of the charge against him and that he was mentally incompetent or under the influence of medication rendering him incompetent are insufficient to entitle him to habeas relief. *United States v. Woods,* 870 F.2d 285, 288 (5th Cir. 1989). In fact, the record and reliable evidence tend to refute his claim. Petitioner was fully admonished and acknowledged in open court that he was aware of the charge and the consequences of changing his plea. Adm. R., Reporter's R., vol. 4, 12-16, ECF No. 16-8. His change of plea was with counsel's consent and belief that petitioner understood his options, his rights, "made an intelligent and free choice" to change his plea, and was capable of consulting with counsel in his defense at the time of the plea. Adm. R., Reporter's R., vol.

23

4, 8-14, ECF No. 16-8. Additionally, the trial court accepted petitioner's plea having observed his demeanor at the time of the plea. Drs. Byrd's and Goodness's opinions further negate petitioner's claim that he was not informed of the charges and was mentally incompetent or that he was under the influence of medication that rendered him incompetent to enter his plea. Petitioner presents no evidence, viewed objectively, that should have raised a reasonable doubt as to his competency until after his plea was entered. Although he exhibited strange behavior following his plea, there is nothing whatsoever in the record indicating that he was incapable of consulting with trial counsel or did not understand the proceedings at the time he changed his plea. Based on petitioner's and his trial counsel's averments in open court and petitioner's demeanor at the time of his plea, there were no red flags suggesting petitioner's competency was in question. Petitioner has failed to demonstrate objective facts known to counsel or the trial court which would have signaled a bona fide doubt as to his competency when he changed his plea. The allegations made by petitioner after the fact are largely conclusory and do not overcome the presumption that he was competent to stand trial when he entered his guilty plea. Without substantiation in the record, a court cannot consider a habeas

24

petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). Petitioner is not entitled to relief under grounds six and seven.

## C. Effect of Guilty Plea

By entering a knowing, intelligent and voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings preceding the plea. This includes all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea under grounds one and eight through twelve and petitioner's *Brady* claim under ground four. *McCarthy v. United States,* 394 U.S. 459, 466 (1969); *Smith*, 711 F.2d at 682; *Orman v. Cain,* 228 F.3d 616, 617 (5th Cir. 2000); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). Under grounds one and eight through twelve, petitioner claims his trial counsel was ineffective by—

- failing to investigate;
- failing to "request a *Franks* hearing on the basis that the warrants contained false statements to support the affidavits for probable cause";
- failing to "interview potential witnesses and state's witnesses";
- failing to "request and obtain DNA testing on biological evidence from the crime scene & compare to petitioner's";
- failing to "seek the identity of the jailhouse informants prior to the day of trial"; and,

25

- failing to "object to admissions of inadmissable hearsay statements and testimony."

Pet. 6, 9-11, ECF No. 1.

Save for the last claim, petitioner's claims of ineffective assistance involve alleged acts or omissions by counsel occurring prior to petitioner's plea. Thus, petitioner's ineffective assistance claims under grounds one, eight, nine, ten and eleven and his *Brady* claim under ground four are waived.

## D. Right to Confrontation

Under his second ground, petitioner claims his right of confrontation was violated "when he was prohibited to cross-examine a witness who[se] statement was admitted at trial without testifying to the statement." Pet. 6, ECF No. 1. Petitioner refers to the testimony of Detective Nutt that Jakeeta Taylor, a Braum's employee, was able to identify him from a photo spread. Adm. R., Reporter's R., vol. 5, 52, ECF No. 16-9. The Confrontation Clause, however, does not apply at noncapital sentencing. *United States v. Fields,* 483 F.3d 313, 331032 (5th Cir. 2007), *cert. denied,* 552 U.S. 1144 (2008). Petitioner is not entitled to relief under his second ground.

## E. Actual Innocence

Under his third ground, petitioner asserts that he is

26

actually innocent based on newly discovered evidence. He asserts

(all misspellings and grammatical errors are in the original)-

> There are witnesses to say petitioner was with him,
> surveillance tapes placing him elsewhere when an
> alleged witness is identified him. Several neighbors to
> say they witness someone's else vehicle at the
> decedent's home. SBC phone records to prove no call was
> made to link petitioner to the crime or a witness to
> place him at the crime scene.

Pet. 7, ECF No. 1.

"Actual innocence" is not an independent ground for habeas

corpus relief. *Herrera v. Collins,* 506 U.S. 390, 400 (1993);

*Foster v. Quarterman,* 466 F.3d 359, 367 (5th Cir. 2006); *Dowthitt*

*v. Johnson,* 230 F.3d 733, 741-42 (5th Cir. 2000). The Supreme

Court reaffirmed in *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931

(2013), that it has not resolved whether a prisoner may be

entitled to habeas corpus relief based on a freestanding claim of

actual innocence. Until that time, such a claim it not cognizable

on federal habeas review. Petitioner is not entitled to relief

under his third ground.

## F. False and Perjured Testimony

Under his fifth ground, petitioner claims his conviction

violates due process because it was based on false evidence and

perjured testimony "material to the verdict." Pet. 8, ECF No. 1.

Specifically, he complains of Detective Nutt's testimony that a

phone call was made from the payphone at Walgreens to the victim's house when SBC records reflect no such call on the date in question; that Jakeeta Taylor identified petitioner in a photo array when she only stated that he "looked like" the man she saw on the morning in question; and that no surveillance video existed at the Kroger's when the store does have video surveillance. He also complains of Richard Householder's testimony that petitioner was using the Quest Personals service in December 2004 when company records indicate he did not use the service from April 10, 2004 through March 3, 2005. Pet. 8, ECF No. 1; Adm. R., Reporter's R., vol. 8, State's Ex. 6, ECF No. 16-12; Adm. R., Writ 254, ECF No. 18-6.

A state denies a criminal defendant due process of law when it knowingly uses perjured testimony at trial or allows untrue testimony to remain uncorrected. *Giglio v. United States,* 405 U.S. 150, 154 (1972); *Creel v. Johnson,* 162 F.3d 385, 391 (5th Cir. 1998). To prevail on a such a claim, a petitioner must show that false testimony was given, that the falsity was material in that it would have affected the jury's verdict, and that the prosecution used the testimony knowing it was false. *Creel,* 162 F.3d at 391.

The state habeas court found that there was no evidentiary basis to find that the witnesses testified falsely, that the state did not ask Householder about December 2004, and that Householder's reference to December 2004 was incorrect. Adm. R., Writ 656-57, ECF No. 18-4. The state court further found that, although the state presented evidence relevant to petitioner's guilt during the punishment phase, petitioner's conviction was based on his voluntary guilty plea. *Id.* This court agrees. Petitioner's guilty plea relieved the state of its constitutional burden to put forth evidence sufficient to sustain his conviction. *United States v. Broce,* 488 U.S. 563, 569 (1989); *Kelly v. Alabama,* 636 F.2d 1082, 1083-84 (5th Cir. 1981). Thus, the complained of testimony was not material to his guilt or innocence. Petitioner is not entitled to relief under his fifth ground.

## D. Ineffective Assistance of Counsel

Under petitioner's twelfth ground, he claims counsel was ineffective by failing to object to inadmissible hearsay statements and testimony by his two cellmates, D'Juan Gipson and John Densmore, and Jakeeta Taylor, who did not testify. Pet. 11, ECF No. 1. The state habeas court found that there was no evidence that petitioner was harmed by admission of Gipson's and

29

Densmore's testimony regarding petitioner's admissions of guilt or Detective Nutt's testimony that Taylor identified petitioner from a photo array as the person she saw at the Braum's parking lot. Adm. R., Writ, vol. 4, 654, ECF No. 18-4. In rejecting petitioner's claim, the state court correctly identified the familiar *Strickland* standard and applied it to the claim.

The question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable—a substantially higher standard.'" *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan,* 550 U.S. 465, 478 (2007)). Because "the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 1420. Petitioner fails to show that his counsel had valid grounds under state law to object to the testimony. Under Texas law, petitioner's own admissions of guilt to his cellmates were not hearsay and were admissible. TEX. R. EVID. 801(e)(2)(A); *Russell v. State,* 598 S.W.2d 238, 254 (5th Cir. 1980) (en banc). Further, in Texas, a police officer is allowed to explain the facts and circumstances that led him to develop the defendant as a suspect. *See Dinkins v. State,* 894 S.W.2d 330, 347 (Tex. Crim.

30

App. 1995) (en banc).

Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, a petitioner fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman,* 472 F.3d 245, 256 (5th Cir. 2006); *Smith v. Puckett,* 907 F.2d 581, 585 n.6 (5th Cir. 1990). Based on this record, petitioner fails to demonstrate that the state court's rejection of his ineffective-assistance claim was contrary to, or involved an unreasonable application of, the deferential *Strickland* standard. Petitioner is not entitled to relief under his twelfth ground.

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED May 2 5, 2016.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE